IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD L. ZIEGLER,

                    Plaintiff,                    OPINION AND ORDER

          v.
                                                  08-06-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period of time, I have assumed administration of the cases previously assigned to him, including this one, which is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Ronald L. Ziegler seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).

Plaintiff contends that the decision of the administrative law judge who denied his claim is not supported by substantial evidence because the administrative law judge erred in making his residual functional capacity by improperly assessing his credibility and not giving

1

the proper weight to the opinions of his examining physicians and erred in finding that plaintiff could perform his past work and other jobs in the economy.   I find that the administrative law judge properly determined plaintiff's residual functional capacity and found that plaintiff was not disabled because there were jobs available in the economy that he could perform.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  Background and Procedural History

Plaintiff was born on December 8, 1960.  AR 34.  He has a post-secondary technical education.  AR 394.  He served in the military from August 1984 through April 1988 and worked as postal worker from 1991 until April 13, 2004.  AR 34, 49.

Plaintiff filed an application for disability insurance benefits on September 30, 2004, alleging that he had been unable to work since April 13, 2004 because of a back disorder, obesity, an anxiety disorder, carpal tunnel syndrome and a heart condition.  AR 34-38.

After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on February 13, 2007 before

2

Administrative Law Judge John Pleuss.  AR 432-38.  The hearing was postponed to give plaintiff the opportunity to obtain legal representation.  The hearing reconvened on May 1, 2007 and the administrative law judge heard testimony from plaintiff, plaintiff's wife and a neutral vocational expert.  AR 393-430.

On June 22, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 11-18.  This decision became the final decision of the commissioner on November 5, 2007, when the Appeals Council denied plaintiff's request for review.  AR 4-6.

## B. Medical Evidence

On January 15, 2003, plaintiff was seen by Dr. James Schneider at the Madison Veterans Administration hospital for panic attacks, high cholesterol, obesity and glucose intolerance.  Plaintiff was prescribed paroextine for panic attacks.  Although plaintiff also was prescribed medication for high cholesterol, he did not take it.  AR 127-29.

On March 27, 2004, plaintiff was seen at the Stoughton Hospital emergency room for chronic low back pain and radicular symptoms in his left leg.  An examination did not reveal any motor or neurological deficits.  AR 172.

On March 29, 2004, plaintiff saw Karen Griffin, a physician's assistant at a University of Wisconsin clinic.  Plaintiff reported that he had aggravated his back pain while bending, twisting and lifting heavy trays of mail at the post office.  Griffin assessed him as having low

3

back pain with L4-L5 radiculopathy and recommended physical therapy.  AR 180-81.  Dr. Mary Flynn prescribed Flexeril and Vicodin for plaintiff and limited him to lifting 10 pounds.  AR 180.

On April 12, 2004, plaintiff again saw Griffin, who noted that his lower lumbar muscle strain was resolved and that he could return to full active duties at work on April 13, 2004.  AR 162.  Plaintiff stopped physical therapy on April 26, 2004, reporting that his back felt "fine" and that he could recover with home exercises alone.  AR 160, 165-71.  In May 2004, plaintiff returned to physical therapy for treatment of right shoulder pain.  AR 150, 157-58.  In June 2004, the physical therapist noted that plaintiff had returned to work.  AR 151.

Also in June 2004, plaintiff returned to Dr. Flynn for a determination whether his back injury was work-related.  Plaintiff reported that his work-related injury claim was denied because of information Griffin provided to his employer.  AR 148.  Dr. Flynn noted that plaintiff was able to bend to get his fingertips about six inches from the floor and that his reflexes were normal.  Dr. Flynn concluded that plaintiff's lumbar strain was resolved and that it had been a work-related condition.  AR 147.

After returning to work, plaintiff's lumbar strain worsened.  On July 20, 2004, he saw Dr. Edward Kramper and reported having pain down his left leg.  AR 147.  Dr. Kramper diagnosed plaintiff with lumbar back strain at approximately L3-4 with some involvement

4

of L4-5 on the left side.  He recommended that plaintiff be placed on light duty for two to three weeks.  AR 146.  In August 2004, Dr. Kramper noted that plaintiff's condition was much improved and released him to work with the following restrictions:  lifting no more than 35 pounds; no more than four to five hours of bending or lifting; and the opportunity to sit down on occasion.  AR 145.

On September 30, 2004, Dr. Kramper examined plaintiff and noted tenderness in the lumbar area at L3-4 and L4-5.  He ordered magnetic resonance imaging scans of plaintiff's lumbar and thoracic spine.  AR 142.  On October 28, 2004, Dr. Kramper reviewed the scans with plaintiff, who had come to the appointment using a cane.  The lumbar spine scan showed disc herniation in L4-L5 and bulging at L1-L2 with compromise of the neuroforamen on both.  The thoracic scan was essentially normal.  Dr. Kramper referred plaintiff to a back surgeon, Dr. Craig Dopf.  AR 140.

On November 4, 2004, Dr. Dopf examined plaintiff to evaluate the pain in his low back, thoracic spine, right upper extremity and left buttock, hip and leg.  Plaintiff reported that he could no longer exercise, work, participate in household activities, mow the yard, rake or shovel snow because of his discomfort.  AR 187.  Dr. Dopf noted that plaintiff was most concerned with his low back pain and left leg pain.  He wrote that neither time nor physical therapy had been effective in lasting pain control or resolving plaintiff's symptoms.  Dr. Dopf concluded that the operative treatment would be decompression and fusion but

5

that plaintiff was not a fusion candidate because he smoked.  AR 189.  Dr. Dopf ordered a cervical magnetic resonance imaging scan.  AR 190.

On December 1, 2004, plaintiff returned to the orthopedic clinic and saw nurse practitioner Martine Batson for a review of his cervical magnetic resonance imaging scan. The cervical scan indicated a right posterolateral C4-5 disc protrusion with right foraminal stenosis and multilevel cervical spondylosis.  The nurse indicated that the most prominent pathology on the scan at right C4-5 did not match up with plaintiff's reports of neck pain radiating into his right arm and fingers.  She recommended deferring further cervical evaluation and treatment and concentrating on plaintiff's low back pain and left leg pain. She advised plaintiff that until he quit smoking, fusion surgery was not an option.  She also recommended weight loss to help his low back pain.  AR 221.

On April 27, 2005, Krista Dopf, a physician's assistant, responded to plaintiff's request for a residual functional capacity assessment.  She wrote that she had been deferring his disability requests to his primary physician, who knew him better, and would not be completing the assessment form.  AR 282.

On May 8, 2005, plaintiff saw Dr. Curtis Bush for the first time.  Plaintiff reported that he had resigned from his job and was pursuing a worker's compensation claim, social security benefits and federal retirement disability benefits.  Plaintiff also described his history of medical problems.  Dr. Bush indicated that the entire visit was spent reviewing plaintiff's

6

past medical records and the legal documents that he brought with him.  AR 288-89.  Dr. Bush referred plaintiff for a functional capacity evaluation.  AR 288.

On June 2, 2005, James Pankratz, a physical therapist at Meriter Hospital, evaluated plaintiff.  Pankratz concluded that plaintiff could perform light to medium work for an eight-hour day according to the Dictionary of Occupational Titles.  Pankratz noted that plaintiff might benefit from a rehabilitation program emphasizing strength, endurance, stabilization principles and proper body mechanics.  AR 268.  He noted that plaintiff could sit and walk occasionally and stand infrequently and needed the opportunity to change positions frequently.  AR 270.  The evaluation form defined occasional as three to 33 percent of the time and infrequent as one to two percent of the time.  Pankratz rated plaintiff as very poor (eight percent) in occasional material handling and above average in hand gripping (67 percent) and pinch gripping (66 percent).  AR 277.

In June 2005, plaintiff returned to see Dr. Bush, who completed a residual functional capacity questionnaire and reviewed plaintiff's current litigation.  AR 284.  Dr. Bush listed plaintiff's diagnoses as persistent back and neck pain, carpal tunnel syndrome, being overweight, panic disorder, cardiomegaly with arrhythmia and smoking.  AR 257.  He stated that he had relied on Pankratz's functional capacity report in forming his opinion.  He indicated that plaintiff's pain would interfere frequently with his attention and concentration and that he was capable of low stress jobs.  Dr. Bush concluded that plaintiff could sit or

7

stand for 30 minutes at a time and could walk one to two blocks but could only sit, stand and walk less than two hours in an eight-hour work day.  He noted that plaintiff needed to walk every 30 minutes for five minutes, shift positions at will, take unscheduled breaks to lie down and be absent more than four days a month.  He wrote that plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, never look down, rarely turn his head right or left, occasionally look up, frequently hold his head in a static position, never twist or climb ladders, rarely stoop and occasionally crouch and climb stairs.  He also noted that plaintiff could grasp, turn, twist objects and perform fine manipulation for an hour a day and reach (including overhead) for a half hour a day.  Dr. Bush wrote that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.  AR 257-60.

On August 16, 2005, Dr. Bush noted that plaintiff called to ask for a refill on his pain medication because he had pulled a muscle lifting an empty hutch.  Bush called in a prescription for the pain medication.  AR 285.

On July 29, 2005, plaintiff saw psychiatrist Dr. Scott Bohon at the Dean Medical Center.  Plaintiff reported having panic attacks of one and a half to two hour duration.  After performing a mental status examination, Dr. Bohon noted that plaintiff was simply furious, his judgment was impaired and his insight was quite diminished by anger or depression.  He noted that plaintiff's memory was good, attention span was fairly good and concentration

8

was diminished.  Dr. Bohon diagnosed plaintiff with panic disorder without agoraphobia and increased his dosage of Paxil.  He also recommended that plaintiff attend an anger management group.  AR 295.  Plaintiff told Dr. Bohon that since he quit work, he spent his time "fishing and taking it easy" and enjoyed taking walks with his family.  AR 291-293.

Also on July 29, 2005, Dr. Bohon completed a mental impairment questionnaire for plaintiff, indicating that he had mild restrictions in daily living activities; moderate difficulties maintaining social functioning; extreme deficiencies of concentration, persistence or pace; and no repeated episodes of decompensation.  AR 265.  Bohon noted that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in his evaluation.  AR 266.  He stated that plaintiff was unable to meet competitive standards in the mental abilities to sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods and understand, remember and carry out detailed instructions.  He also indicated that plaintiff had no useful ability to deal with normal work stress or set goals or make plans independently of others.  He wrote that plaintiff's panic disorder amplified his chronic back pain.  AR 263-65.

On September 20, 2005, plaintiff returned to see Dr. Bohon, who noted plaintiff was doing a bit better on the increased Paxil.  Plaintiff reported that his mood was stable.  AR 291.

A December 21, 2005 echocardiogram of plaintiff's heart identified right ventricular and biatrial enlargement with normal systolic function.  AR 314.  Cardiologist Kay Barrett examined plaintiff on January 9, 2006 and reviewed the echocardiogram.  She concluded that the mild increase in right heart pressure was caused by plaintiff's obesity and possibly sleep apnea.  She wrote that no further cardiac evaluation was needed.  AR 308.  Plaintiff underwent a sleep study, which was normal.  AR 305, 313.

On January 10, 2006, plaintiff saw Dr. Schneider.  Plaintiff rated his pain a zero.  The examination was normal.  Dr. Schneider recommended that plaintiff work on diet and exercise.  AR 368-69.

C. Consulting Physicians

On December 17, 2004, state agency physician Robert Callear completed a physical residual functional capacity assessment for plaintiff, indicating that his primary diagnosis was lumbar spine and radicular pain.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand or walk six hours in an eight-hour day; frequently balance; and only occasionally climb, stoop, kneel, crouch or crawl.  AR 223-27.  Dr. Callear

10

noted that plaintiff's subjective pain was "slightly over what would be expected based solely on the objective findings."  AR 228.

On December 21, 2004, state agency psychologist Keith Bauer completed a psychiatric review technique form for plaintiff.  He found plaintiff had an anxiety-related disorder that was not severe and had mild limitations in the activities of daily living.  AR 235-48.  In the section of the form entitled "Consultant's Notes," Dr. Bauer wrote "see EWS notes," referring presumably to the electronic case development worksheet used by the disability adjudication team.  AR 409.  On that sheet, Dr. Bauer expressed his opinion that plaintiff did not have a severe psychological impairment, noting in support that plaintiff read and used the computer daily, attended his children's sporting events, did not need reminders to go places, had a good ability to follow verbal and written directions (as reported by his wife) and maintained his social contacts, interests and hobbies.  He also noted that the medical records related to plaintiff's psychological condition were sparse, showing only that plaintiff received medication.  AR 130, 247.  On June 6, 2005, state agency psychologist Anthony J. Matkom affirmed Dr. Bauer's assessment.  AR 235.

On March 31, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff indicating he had back pain and was obese.  Chan found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand

11

or walk six hours in an eight-hour day; frequently balance, climb, kneel, crouch and crawl; and only occasionally stoop.  AR 249-56.

### D.  Hearing Testimony

At the hearing, plaintiff testified to the following.  He lived with his wife and three children, AR 393, had completed high school and two years of technical college, weighed 305 pounds and was six foot two inches tall.  AR 411.

Plaintiff last worked in April 2004 for the United States Postal Service as a mail handler where his job involved lifting and moving parcels of mail.  He stood all of the time and had to lift or carry 70 pounds.   AR 413.  He left his job in April 2004 because of left leg and right arm pain.  AR 394-95.

Plaintiff was diagnosed with a herniated disc in the lumbar spine, had gone to physical therapy but had refused injections and had been told he was not a good surgical candidate because he smoked.  AR 397-98.  Plaintiff uses a cane when he leaves the house, AR 400, had both pain and numbness in his leg and could stand for ten minutes at a time and walk for two city blocks.  AR 400-01.  He needed to sit in a recliner and take Advil to relieve his back pain.  AR 403-04.  He had pain and numbness in his right arm because of a bulging disc, AR 404, and has trouble grasping with both hands.  AR 405-06.  He has panic disorder and has daily panic attacks.  AR 407-08.  He admitted that he was angry and

12

frustrated with his condition.  AR 408.  He had been diagnosed with cardiac arrhythmia and an enlarged heart and that he had to lie down to slow down his heart beats.  AR 409-10.

Plaintiff hunts for normal redfoot deer.  He walks a short distance into the woods and hunts while standing or sitting in a chair.  AR 411.  He also fishes about once a month.  AR 416.  He drives short distances every day and smokes a pack of cigarettes a day.  AR 412. He sometimes uses a dust mop, cooks food in the microwave and mows the lawn a few times a year with a self-propelled mower.  AR 417-18.

Plaintiff's wife testified that she had been married to plaintiff for 15 years and that in the last five years, she had witnessed plaintiff's physical condition deteriorate.  AR 419. She testified that plaintiff overestimates what he can actually do and that when he reclines and raises his feet, the pain in his back subsides.  AR 419.  She indicated that he spends five to six hours a day in his recliner.  AR 421.  Plaintiff's wife also testified that she had witnessed plaintiff's anger and panic attacks.  AR 422-23.

The administrative law judge called Karl Botterbusch, a neutral vocational expert, to testify.  AR 423.  Botterbusch identified plaintiff's past work as a post office clerk.  He testified that according to the Dictionary of Occupational Titles, it was semi-skilled light work, but that plaintiff had performed it at a heavy level.  Botterbusch also testified that there was no separate classification in the Dictionary for post office mail handler but that there were titles of mail handler in the printing and publishing industries.  He stated that

13

there were skills from plaintiff's post office clerk job that were transferrable to other work at the light and sedentary levels.  AR 425.

The administrative law judge asked the expert whether plaintiff's past job as a post office clerk could be performed by an individual of plaintiff's age, education and work history who was capable of light work with the following limitations:  no climbing of ropes, ladders or scaffolds; occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling or twisting; standing and sitting for no more than 30 minutes at one time; limited but satisfactory ability to relate to co-workers, interact  with supervisors, behave in an emotionally stable manner and understand, remember and carry out detailed job instructions; and seriously limited but not precluded from dealing with the public and work stresses. AR 425.  Bottterbusch testified that such an individual could not perform plaintiff's past job as he had performed it but could perform the post office clerk job as it is generally performed.  He also testified that such an individual could perform 3,500 unskilled light mail clerk jobs, 860 unskilled light parking lot attendant jobs, 760 unskilled light injection molding machine tender jobs, 1,870 office helper jobs and 450 x-ray inspector jobs.  AR 426.

The administrative law judge asked Botterbusch to consider an individual capable of sedentary work with the above limitations.  Botterbusch testified that such an individual would not be able to perform plaintiff's past job as he had performed it or as it is generally

14

performed.  Botterbusch testified that the individual could perform 1,200 order clerk (food

and beverage) jobs and 9,500 telemarketer jobs.  AR 427.

On cross examination, Botterbusch testified that in identifying the postal clerk job

described in the <u>Dictionary</u>, he had considered a restriction of being seriously limited but not

precluded from dealing with the public.  Bottterbusch further testified that although postal

clerks have to deal with the public, he interpreted "seriously limited but not precluded" as

meaning that the person can perform the job but "it is hard on you and you would rather not

be doing it."  AR 428.

### E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge

performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  At step one,

he found that plaintiff had not engaged in substantial gainful activity since April 13, 2004,

the alleged onset date of his disability.  At step two, he found that plaintiff had severe

impairments of obesity, anxiety disorder and degenerative spinal disease.  The administrative

law judge noted that plaintiff's obesity was documented in the medical records.  AR 13.  He

concluded that plaintiff had an anxiety disorder for which Dr. Schneider had prescribed

Paxil.  AR 14.  Noting the results of plaintiff's magnetic resonance imaging studies, the

administrative law judge found that plaintiff's back condition was a severe impairment.  AR

15. The administrative law judge concluded that plaintiff's carpal tunnel syndrome, enlarged heart, sleep apnea disorder and diabetes were not severe impairments. The administrative law judge noted that although plaintiff complained of an enlarged heart to Dr. Bush, subsequent cardiac testing did not indicate that plaintiff had a significant cardiac problem. AR 15.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. AR 15. He stated that plaintiff's spinal impairment did not meet a listed impairment because his strength, sensation and reflexes were normal and he had not undergone significant treatment. AR 15. In addressing plaintiff's mental impairment, the administrative law judge found that it did not meet a listed impairment because plaintiff had no more than mild limitations of daily living and social functioning; possible moderate limitations of concentration, persistence and pace; no evidence of any extended episodes of decompensation; and no evidence of the "C" criteria.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform a range of light work with the following limitations: lifting up to 20 pounds occasionally and 10 pounds frequently; occasional climbing of ramps or stairs, stooping, bending, crouching, crawling, kneeling or twisting; no climbing ladders, ropes or scaffolds; and sitting or standing up to a half hour without alternating positions. He also

found that plaintiff had a limited but satisfactory ability to relate to co-workers, interact with supervisors, behave in an emotionally stable manner and understand, remember and carry out detailed instructions.  He found plaintiff seriously limited but not precluded from dealing with the public and work stresses.  AR 16.

The administrative law judge discounted the opinion of Dr. Bush that plaintiff could not sit or stand for as much as two hours during an eight hour day, would need three breaks during a day to lie down and would be absent as many as four days a month because Bush had seen plaintiff only twice in 2005 before reaching his opinion.  The administrative law judge noted that at the first visit, plaintiff gave Dr. Bush a history of his complaints and explained his worker's compensation case but no examination or testing was done.  At the second visit, Dr. Bush completed the physical capacity questionnaire and reviewed the state of plaintiff's litigation.  AR 14.  In addition, the administrative law judge noted that when plaintiff saw Dr. Bush in August 2005, he reported some back pain after moving a hutch, an action that was entirely inconsistent with Dr. Bush's limitations.  AR 15.

The administrative law judge also noted that plaintiff's medical records failed to show recent treatment or even complaints of significant back problems or that he was taking any significant pain medication.  He mentioned that plaintiff's November 2004 magnetic resonance imaging scan of his cervical spine was not consistent with his self reported

17

symptoms.  AR 15.  The administrative law judge discussed plaintiff's physical limitations

as follows:

> Perhaps most significant with regard to the allegations of
> disability is the functional capacity evaluation performed at
> Meriter Hospital.  Dr. Bush had referred the claimant for this
> evaluation, but apparently did not see it before completing his
> assessment of the claimant's limitations.   Physical therapist
> James Pankratz performed this evaluation on June 2, 2005 and
> found the claimant capable of light to medium work (as defined
> by the Dictionary of Occupational Titles) throughout an eight
> hour day.  Mr. Pankratz did add that he felt the claimant might
> benefit from a rehabilitation program.

AR 17.

In assessing plaintiff's mental limitations, the administrative law judge discounted Dr.

Bohon's opinion that plaintiff had extreme impairment of concentration, persistence and

pace and that his panic attacks prevented him from working.  He noted that Dr. Bohon had

seen plaintiff only once before rendering his opinion and had based his diagnosis on

plaintiff's reports of frequent and severe panic attacks.  The administrative law judge did not

find that these self-reports were documented in the medical record as a whole.  He further

noted that Dr. Schneider had prescribed Paxil for plaintiff's anxiety, which helped him.  In

a addition, he noted that the state agency psychologist found that plaintiff did not have a

severe mental impairment.  AR 14-17.

The administrative law judge found that plaintiff's statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible.  AR 16. He cited the following in support of his conclusion:

- Plaintiff's testimony that his daily activities were severely limited contradicted his July 2005 statements to Dr. Bohon that he spends time fishing and taking walks with his family;

- Plaintiff ended physical therapy in April 2004 because he felt that his back would heal on its own;

- Several physicians reported that plaintiff was capable of light or medium level work;

- Plaintiff reported moving a hutch one month after Dr. Bush assessed him with limitations;

- Plaintiff's most recent medical records failed to show that he complained of or was treated for significant back problems;

- As of March 2007, plaintiff was not on any significant pain medication;

- Dr. Dopf refused to assign plaintiff any limitations, referring him instead to his primary physician;

- Although plaintiff told Dr. Bush that he had an enlarged heart, subsequent cardiac testing did not show a significant impairment;

- Plaintiff was "conversant with the legalities involved when . . . describing the interaction of his concurrent worker's compensation, federal employee disability retirement and social security claims" with Dr. Bush;

- Plaintiff complained to Dr. Bush about Griffin, apparently blaming her for being denied worker's compensation;

19

- Plaintiff's strength, sensation and reflexes were normal;

- Plaintiff has never undergone surgery and has not received any treatment more significant than physical therapy;

- Batson, a nurse working with Dr. Dopf, found that although plaintiff had some cervical spinal pathology, it was not consistent with his reported symptoms; and

- In 2005, Pankratz found plaintiff capable of light to medium work.

AR 16-17.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff was capable of performing his past work as a post office clerk as that job is generally performed in the national economy and a significant number of other jobs in the state of Wisconsin, namely mail clerk, parking lot attendant, injection molding machine tender, general office worker and x-ray inspector.  AR 17-18.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

20

Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Residual Functional Capacity

Plaintiff contends that the administrative law judge erred in determining both his physical and mental residual functional capacity by finding him not credible, improperly rejecting the opinions of his physicians and misinterpreting Pankratz's functional capacity evaluation.  I will address each concern separately.

1.   <u>Credibility</u>

Plaintiff challenges the administrative law judge's determination that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); <u>see also</u> <u>Scheck v. Barnhart</u>, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding his symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must consider are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other

22

treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.   SSR 96-7p; 20 C.F.R. § 404.1529©); see also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

In making his credibility determination, the administrative law judge considered the lack of supporting medical evidence.  He noted that plaintiff's strength, sensation and reflexes were normal; he had not undergone significant treatment for back pain; he quit physical therapy in April 2004 because his back was fine and he felt that it would heal on

23

its own; and he had not recently complained of severe back pain.  The administrative law judge noted that except for Dr. Bush, plaintiff's physicians limited his activity, if at all, to light work.  After plaintiff injured his back and shoulder in 2004, physicians assistant Griffin and Dr. Kramper stated that plaintiff was able to lift up to 35 pounds (light work).  Even though plaintiff reported extreme limitations in October and November 2004, Dr. Dopf assessed him with no limitations.  At that time, Batson also noted that plaintiff's self-reported neck and arm pain were not consistent with his cervical magnetic imaging study results.  The administrative law judge noted that one month after Dr. Bush assessed plaintiff with severe limitations, he reported moving a large piece of furniture.  Plaintiff also had reported to Dr. Bush that he had an enlarged heart and arrhythmia and that he had to lie down to help this condition.  However, cardiac testing did not show that he had any severe cardiac impairment.  In 2005, Pankratz found plaintiff capable of light to medium work. The administrative law judge also noted that plaintiff had never undergone surgery and did not receive any treatment more significant than physical therapy.

In addition to the medical evidence, the administrative law judge considered other relevant factors listed in the regulation.  He noted that recent records indicated that plaintiff had not reported severe back pain and was not taking any significant pain medication.  He pointed out that plaintiff's testimony about his activity level contradicted statements that he had made to his physicians.  Specifically he wrote that in July 2005, plaintiff told Dr.

24

Bohon that he fished and took walks with his family.  In August 2005, plaintiff told Dr. Bohon that he had back pain because he had moved a piece of furniture.  The administrative law judge also doubted plaintiff's credibility because he was well aware of the "legalities" of his disability claim when speaking with Dr. Bush and appeared to blame Griffin for his denial of worker's compensation.

Plaintiff finds fault with some of the reasons provided by the administrative law judge, arguing that he misinterpreted the record.  His arguments are not persuasive.  First, plaintiff contends that although he stopped physical therapy when his back pain improved in April 2004, he reinjured himself later that year and returned to physical therapy.  However, the record shows that following those injuries, plaintiff was released to light duty.  Although Dr. Bush assessed him with disabling limitations in 2005, the state agency physicians and Pankratz found him capable of at least light work.  Further on January 10, 2006, plaintiff reported to Dr. Schneider that he did not have any pain and his examination was normal.

Plaintiff asserts that the administrative law judge erred in finding him not credible from the fact that he knew a lot about the "legalities" of his workers' compensation and disability claims and complained about a physician assistant.  Considered alone, these statements may seem innocuous.  However, given the lack of medical evidence supporting plaintiff's allegations and the inconsistent statements that he made about his physical

25

condition and activity level, it was not unreasonable for the administrative law judge to draw a negative inference from plaintiff's discussions with Dr. Bush.

Plaintiff criticizes the administrative law judge for relying on the discrepancy between his pain reports and the magnetic resonance imaging studies taken by Dr. Dopf. He contends that the discrepancy related only to his cervical pain and not his lumbar pain. Although plaintiff is correct, this fact is irrelevant. The administrative law judge reasonably could infer from even this one discrepancy that plaintiff was exaggerating some of his symptoms. Even though the discrepancy was limited to his cervical symptoms, it still bears on his credibility.

Finally, plaintiff faults the administrative law judge for stating that Dr. Dopf "repeatedly refused" to provide a statement regarding his limitations. As plaintiff points out, physician assistant Krista Dopf stated that she was deferring to the opinion of plaintiff's treating physician, who had been treating plaintiff for a longer time. Although the administrative law judge may have exaggerated the significance of physician assistant Dopf's statement, he is correct that Dr. Dopf did not assess any restrictions for plaintiff or adopt those of Dr. Bush. It is reasonable to assume that had Dr. Dopf felt strongly that plaintiff should not be working, he would have said so.

In any event, the alleged errors cited by plaintiff amount to little more than nitpicking and do not show that the administrative law judge's credibility finding is patently wrong.

26

Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, 'we give the opinion a commonsensical reading rather than nitpicking at it.'") (quoting Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999)).  On the whole, the administrative law judge provided several well-founded reasons in support of his credibility finding, which is supported by substantial evidence.   Plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.  The administrative law judge built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements considering his limitations were not fully credible.

## 2.  Opinions of Dr. Bush and Pankratz

Plaintiff contends that the administrative law judge erred in rejecting Dr. Bush's opinion, which relied on and was consistent with the report of Pankratz.  The commissioner argues that Dr. Bush was not a treating physician because he saw plaintiff only twice before stating his opinion.  Although Dr. Bush's opinion is not entitled to controlling weight, it should be given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(1)-(2).  However, an administrative law judge is not bound by an examining physician's opinion and must evaluate it the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other

27

explanations regarding the opinion.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005);

20 C.F.R. § 404.1527(d) and (e).  An administrative law judge can reject an examining

physician's opinion if his reasons for doing so are supported by substantial evidence in the

record.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  When the record contains

well supported contradictory evidence, even a treating physician's opinion "is just one more

piece of evidence for the administrative law judge to weigh."  Hofslien v. Barnhart, 439 F.3d

375, 377 (7th Cir. 2006); 20 C.F.R. § 404.1527(d)(2).  Opinions from physicians "who do

not have a treatment relationship with the individual are weighed by stricter standards, based

to a greater degree on medical evidence, qualifications, and explanations for the opinions,

than are required of treating sources."  Social Security Ruling 96-6p, 1996 WL 374180, *2

(1996).  The final decision about whether plaintiff is disabled is a legal one to be made by

the administrative law judge, and the administrative law judge's reasonable resolution of

conflicts in the medical evidence is not subject to review.  Kapusta v. Sullivan, 900 F.2d 94,

97 (7th Cir. 1989); see also Diaz v. Chater, 55 F.3d 300, 306 n. 2 (7th Cir. 1989)

(determination of claimant's limitations is decision reserved to Social Security

Administration, which must consider entire record and not only physicians' opinions).

The administrative law judge found that prior to issuing his opinion in 2005, Dr.

Bush had seen plaintiff only twice and had not examined or tested him during those visits.

He noted that when Dr. Bush saw plaintiff in August 2005, plaintiff complained of back pain

28

caused by moving furniture, an activity that was not consistent with the limitations that Dr. Bush had assessed the previous month.  The administrative law judge stated that the most recent medical records failed to show that plaintiff complained of or received treatment for significant back problems or that he was taking significant pain medication for back pain. He also pointed out that Dr. Dopf's office found that plaintiff's self-reported symptoms were not consistent with the results of his cervical magnetic resonance imaging studies.  Instead, the administrative law judge found persuasive the evaluation performed by Pankratz, who concluded after examining plaintiff that he was capable of light to medium work.

Plaintiff disputes the administrative law judge's finding that Dr. Bush did not base his opinion on "serious testing."  He argues that Dr. Bush sent him to Pankratz for testing and relied on the resulting report.  As plaintiff contends, the administrative law judge incorrectly stated that Dr. Bush had not seen Pankratz's report before completing his assessment of plaintiff's limitations.  Dr. Bush states in his treatment notes and completed questionnaire that he had reviewed the report.  Even though Dr. Bush apparently relied on Pankratz's report, I do not find that it supports the extensive limitations assessed by Dr. Bush.

Dr. Bush found limitations that were not mentioned in Pankratz's evaluation, namely that plaintiff needed to take unscheduled breaks to lie down and would be absent four days a month.  He offered no basis for these opinions and nothing in his prior progress notes

29

supports them.  As the administrative law judge pointed out, those notes consisted of plaintiff's self-reports and discussions about his disability application.  Plaintiff counters that Dr. Bush had reviewed all of his prior records, test results and examinations.  However, Dr. Bush never discussed which evaluations or test results supported his conclusions.  Further, plaintiff's previous physicians had limited him only to light work.

Plaintiff next asserts that although the administrative law judge accepted Pankratz's conclusion that plaintiff could perform light to medium work, he ignored the limitations found in the report.  Specifically, he points to the limitations of occasional sitting and walking and infrequent standing, reaching and bending.  The form that Pankratz completed defines "occasionally" as three to 33 percent of the time and indicates that a person performing light or medium work must be able to sit and stand constantly.  Plaintiff argues that the administrative law judge ignored these limitations and misread Pankratz's conclusion because the remainder of the report shows that plaintiff was not capable of performing light work.

As the commissioner points out, plaintiff interprets occasional sitting and walking and infrequent standing to mean less than sedentary work.  However, Pankratz made a notation that plaintiff has to change positions frequently.  Pankratz apparently interpreted the limitations together with the sit or stand option as the ability to perform light to medium work for an eight-hour day.  It was reasonable for the administrative law judge to rely on

30

Pankratz's interpretation of his own evaluation. In addition, he accounted for the need for plaintiff to change positions by limiting him to a sit or stand option every thirty minutes. Further, contrary to plaintiff's assertions, an administrative law judge is not required to adopt every limitation assessed by a provider. Only those limitations supported by medical evidence in the record must be incorporated into the residual functional capacity finding and the hypothetical posed to the vocational expert. Young v. Barnhart, 362 F.3d 995, 1001-02 (7th Cir. 2004); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002).

In any event, even if the administrative law judge misread or erred in relying on Pankratz's report, substantial evidence in the record supports his conclusion. When plaintiff was seen for back and leg pain in March 2004, an examination showed that he did not have any motor or neurological defects. Although physical therapy was recommended, plaintiff stopped going in April 2004 because his back felt fine and he thought that he could recover on his own. On April 12, 2004, Griffin noted that his lumbar muscle strain was resolved and he could return to work. In June 2004, plaintiff was released to work after receiving physical therapy for his right shoulder pain. Plaintiff further injured his back after returning to work and was placed on light duty for two weeks because of pain down his leg. However, by August 2004, Dr. Kramper noted that plaintiff's condition was much improved and released him to light work, lifting no more than 35 pounds, four to five hours of bending or lifting and the opportunity to sit down on occasion. Although plaintiff reported continuing and

31

worsening symptoms, Dr. Dopf did not assign plaintiff any restrictions after examining him in November 2004.  In December 2004 and March 2005, state agency physicians found that plaintiff could perform light work.

In sum, I find that the administrative law judge appropriately considered and weighed both Dr. Bush's and Pankratz's assessments of plaintiff's limitations and discounted Dr. Bush's opinion for good reasons that are supported by substantial evidence in the record.


2.  Mental Residual Functional Capacity

Plaintiff argues that the administrative law judge erred in rejecting the opinion of Dr. Bohon in favor of those of the state agency physicians concerning his mental limitations. In support, he asserts that the state agency psychologists did not have the opportunity to review Bohon's report.  However, contrary to plaintiff's suggestion, Bohon was not his treating physician.  Bohon saw plaintiff the same day that he assessed him, and his report indicates that he did not know plaintiff well.  The state agency physicians were able to review plaintiff's other psychological records, which as one consultant noted, were quite sparse.

I find that the administrative law judge properly considered and rejected Dr. Bohon's findings for good reasons.  He pointed to the fact that Bohon had seen plaintiff only once and based his opinion almost entirely on plaintiff's self-reports, which were not supported by the sparse medical record.  It is well settled that an administrative law judge may

32

disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility.  Diaz v. Chater, 55 F.3d 30 0, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations  may be disregarded where those complaints have been properly discounted).  Because the administrative law judge properly found that plaintiff was not entirely credible, it follows that he could reject an opinion based on these unreliable reports.

The administrative law judge's conclusion was well founded.  Dr. Schneider noted that plaintiff's anxiety was well controlled by Paxil.  On plaintiff's second visit in September 2005, Dr. Bohon reported that plaintiff was doing better on the increased dosage of Paxil and that his mood was stable.  Plaintiff contends that even though Bohon described him as stable, he noted that plaintiff continued to have panic attacks three to four times a week. I find no such statement in the September 2005 progress note.  However, such a statement

33

would have been based on plaintiff's self-reports, which the administrative law judge found not credible. Further, the previous year, the consulting psychologists reviewed plaintiff's psychiatric records and found that he did not have a severe impairment. On the electronic case development worksheet, the consulting psychologist noted that plaintiff read and used the computer daily, attended his children's sporting events, did not need reminders to go places, had a good ability to follow verbal and written directions (as reported by his wife) and maintained his social contacts, interests and hobbies.

Plaintiff suggests that the administrative law judge should have re-contacted Dr. Bohon to clarify his opinion. When the evidence in the record from a medical source is inadequate to make a determination about whether a claimant is disabled or contains a conflict or ambiguity, an administrative law judge will seek additional information by re-contacting that medical source. 20 C.F.R. § 404.1512(e). In this case, the administrative law judge reasonably could conclude that Bohon's report did not need any clarification. There is no indication that the opinion was conflicting or ambiguous. The administrative law judge had substantial evidence from which to conclude that plaintiff was not disabled. Plaintiff's limited psychological records and self-reports simply did not support the severity of limitations that Bohon assessed.

Next, plaintiff argues that even if the administrative law judge validly rejected Dr. Bohon's opinion, he failed to explain how he reached his mental residual functional capacity

34

assessment.  Plaintiff asserts that neither the opinions of the state agency psychologists nor Bohon support the adjudicator's findings that he was seriously limited but not precluded from dealing with the public and work stresses and had a limited but satisfactory ability to interact with supervisors, behave in an emotionally stable manner and understand, remember and carry out detailed instructions.  However, as previously discussed, an administrative law judge must adopt only those limitations supported by medical evidence in the record. <u>Young</u>, 362 F.3d at 1001-02; <u>Steele</u>, 290 F.3d at 942.

Although the administrative law judge could have explained his reasoning more clearly, I am able to find a logical and accurate bridge from the evidence to his conclusion. He did not agree completely with either the consulting psychologists or Dr. Bohon, but he reasonably found that substantial evidence supported at least some limitations for plaintiff.

C.  <u>Ability to Work</u>

Plaintiff argues that the administrative law judge improperly found that he could perform his past relevant work as "post office clerk" as the job is generally performed in the national economy.  Plaintiff asserts that he was not a "post office clerk" but rather a mail handler.  The vocational expert identified plaintiff's past job as post office clerk as that job is described in the <u>Dictionary of Occupational Titles</u>.  He testified that there was not

separate classification of post office "mail handler" in the <u>Dictionary</u>.  Given this explanation and plaintiff's failure to challenge it at the hearing, it was reasonable for the administrative law judge to rely on the vocational expert's classification of the job.

Plaintiff also argues that the administrative law judge erred in relying on the vocational expert's testimony that the hypothetical individual could work as a post office clerk even though he was "seriously limited but not precluded" from dealing with the public. He contends that the expert did not properly interpret that limitation.  However, on cross examination, the vocational expert testified that he had considered this limitation and agreed that a postal clerk has to deal with the public.  The expert explained that a person who was "seriously limited but not precluded" from dealing with the public could perform the job, albeit with difficulty.  This is a reasonable conclusion.  Further, the administrative law judge was present during this testimony and did not correct the expert's interpretation of his residual functional capacity assessment.

In any event, even if the administrative law judge did err in finding that plaintiff could perform his past work as a post office clerk as that job is generally performed in the national economy, that error was harmless.  The administrative law judge went on to determine at step five that there were a significant number of other jobs available in the national economy that plaintiff could perform, namely mail clerk, parking lot attendant, injection molding machine tender, general office worker and x-ray inspector.  Because the

36

administrative law judge properly determined plaintiff's physical and mental residual functional capacity and presented them to the vocational expert, he was entitled to rely on the vocational expert's testimony that plaintiff could perform these jobs.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Ronald L. Ziegler's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 15th day of September, 2008.

BY THE COURT:


/s/

_____

BARBARA B. CRABB
District Judge

37